UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JOSE A. CRUZ,

        Petitioner,

v.                                   Case No:  2:16-cv-49-FtM-38CM

FLORIDA ATTORNEY GENERAL
and SECRETARY, DOC,

        Respondents.

_____/

## OPINION AND ORDER[1]

Before the Court is Petitioner Jose Cruz's Petition for Writ of Habeas Corpus (Doc. 1) Respondent, Julie Jones, Secretary of the Department of Corrections Response in Opposition, (Doc. 16) and Petitioner's Reply Brief (Doc. 21).  The Petition is briefed and ripe for the Court's review.

## BACKGROUND

On April 23, 2005, an argument occurred between Cruz and Rita Nunez over the ownership of her Chevrolet Astro Van.  Nunez held the title to the van, but Cruz had been using the van for work.  In the end, Nunez took possession of the van and drove it back to Clewiston from Miami.

---

[1] Disclaimer:  Documents filed in CM/ECF may contain hyperlinks to other documents or websites.  These hyperlinks are provided only for users' convenience.  Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees.  By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites. Likewise, the Court has no agreements with any of these third parties or their websites. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

On April 24, 2005, at around 1:00am. Jose Cruz and Yanetsy Cardenas forcibly entered the residence of Rita Nunez in Clewiston, Florida. Cruz forced Nunez up against the wall and put a gun to her head and yelled "give me the papers, give me the papers" (Vol. I at 117). Nunez's twelve-year-old son, Edward Monteagudo, woke up when he heard the commotion and entered the front room where Nunez and Cruz were located. (Vol. I at 117). When Monteagudo entered the room, Nunez pulled the gun from Nunez and pointed it at him. (Vol. I at 118). Cruz forced Monteagudo to walk toward Nunez's bedroom while Cardenas grabbed Nunez and forced her into the bedroom. Cruz pointed the gun at Nunez and Monteagudo and threatened both. (Vol. I at 118).

On February 28, 2006, Cruz was charged with two counts of aggravated assault with a firearm Counts 1 and 2, battery Count 3, and burglary of a dwelling while armed Count 4. (Vol. I at 8-11). A jury trial was held in the Circuit Court for the Twentieth Judicial Circuit before the Honorable Bruce E. Kyle on October 16-18, 2007. Cruz was represented by Assistant Public Defender, Shirley Whitsitt. Cruz was found guilty of the lesser included offense of aggravated assault with a deadly weapon on Count 1; the lesser include offense of assault on Count 2; battery as charged on Count 3; and burglary while armed, but without possession of a firearm, on Count 4. (Vol. I at 40-41, 60-69).

The Public Defender's Office represented Cruz on appeal. The Second District Court of Appeal affirmed his conviction *per curiam* on May 15, 2019. *Cruz v. State*, 11 So. 3d 946 (Fla. 2d DCA 2009) (Table). (Ex. 5). Cruz filed for a rehearing, which was denied, and mandate was issued on July 13, 2009. (Ex. 8). On June 23, 2010, Cruz filed an untimely *pro se* Notice to Invoke Discretionary Jurisdiction with the Florida Supreme

Court. The Florida Supreme Court dismissed the petition finding it lacked jurisdiction. *Cruz v. State*, 41 So. 3d 217 (Fla. 2010) (Table).

On April 1, 2010, Cruz filed a *pro se* "Motion to Correct Illegal Sentence as to Amount of Jail Credit, Nunc Pro Tunc". (Ex. 11). On August 30, 2010, the Post-Conviction Court granted Cruz Rule 3.800(a) motion and issued an amended judgment and sentence reflecting six more days of jail time credit. (Ex. 12). The order was not appealed.

Cruz filed his first Rule 3.850 motion for postconviction relief on July 6, 2010, which he amended September 16, 2010. (Ex. 13). The motion was summarily denied by the Post-Conviction Court. (Ex. 13). Cruz filed a notice of appeal on October 24, 2011. The Second District Court of Appeal affirmed *per curiam* and mandate issued in September 11, 2012. (Ex. 16).

On April 16, 2012, Cruz filed his second 3.800 motion while his 3.850 motion was pending. In his second 3.800 motion, Cruz again moved the Court to correct what he claimed was an illegal sentence. The Post-Conviction Court found that Cruz's claims were not cognizable under a Rule 3.800 motion. The Second District Court of Appeal affirmed *per curiam* and the mandate issued on September 10, 2015. (Ex. 20).

Cruz filed a petition for writ of habeas corpus to correct manifest in justice with the Second District Court of Appeal on September 13, 2013. (Ex. 28). The petition was denied in October 1, 2013. (Ex. 29). On November 13, 2014, the Florida Supreme Court denied review holding it did not have jurisdiction to review the case. (Ex. 30).

Cruz filed his second 3.850 motion for postconviction relief on September 12, 2014. The Post-Conviction Court denied the motion as successive and untimely. (Ex.

22). The Second District Court of Appeal affirmed *per curiam*. (Ex. 25). *Cruz v. State, 177 So. 3d 614 (Fla. 2d DCA 2015)* (Table). Cruz moved for a rehearing which was denied on October 6, 2015, and mandate issued on October 30, 2015. Cruz now files this Petition for Writ of Habeas Corpus. Respondent concedes that the Petition is timely filed.

## STANDARDS OF REVIEW

### *Antiterrorism Effective Death Penalty Act ("AEDPA")*

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), governs this action. *Abdul-Kabir v. Quarterman*, 550 U.S. 233, 246 (2007). Under AEDPA, the standard of review is greatly circumscribed and highly deferential to the state courts. *Alston v. Fla. Dep't of Corr.*, 610 F.3d 1318, 1325 (11th Cir. 2010) (citations omitted). AEDPA altered the federal court's role in reviewing state prisoner applications in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

Under the AEDPA, federal habeas relief may not be granted regarding a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (a) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (b) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). This standard is both mandatory and difficult to meet. *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014). A state court's summary rejection of a claim,

even without explanation, qualifies as an adjudication on the merits which warrants deference. *Ferguson v. Culliver*, 527 F.3d 1144, 1146 (11th Cir. 2008). Notably, a state court's violation of state law is not sufficient to show that a petitioner is in custody in violation of the "Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Wilson v. Corcoran*, 562 U.S. 1, 16 (2010).

"Clearly established federal law" consists of the governing legal principles, rather than the *dicta*, set forth in the decisions of the United States Supreme Court at the time the state court issued its decision. *White,* 134 S. Ct. at 1702*; Carey v. Musladin, 549* U.S. 70, 74 (2006) *(citing Williams v. Taylor,* 529 U.S. 362, 412 (2000)). The Supreme Court has also explained that "the lack of a Supreme Court decision on nearly identical facts does not by itself mean that there is no clearly established federal law, since 'a general standard' from [the Supreme Court's] cases can supply such law." *Marshall v. Rodgers*, 133 S. Ct. 1446, 1449 (2013) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). State courts "must reasonably apply the rules 'squarely established' by [the Supreme] Court's holdings to the facts of each case. *White*, 134 S. Ct. at 1706 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)).

Even if there is clearly established federal law on point, habeas relief is only appropriate if the state court decision was "contrary to, or an unreasonable application of," that federal law. 29 U.S.C. § 2254(d)(1). A decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts. *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010); *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable manner, *Brown v. Payton*, 544 U.S. 133, 134 (2005); *Bottoson v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Bottoson*, 234 F.3d at 531 (quoting *Williams*, 529 U.S. at 406). The petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *White*, 134 S. Ct. at 1702 (quoting *Harrington v. Richter*, 562 U.S. 86 (2011)). Moreover, "it is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court." *Knowles*, 556 U.S. at 122.

Finally, when reviewing a claim under § 2254(d), a federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct[,]" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Burt v. Titlow*, 134 S. Ct. 10, 15 (2013) ("[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.") (quoting *Wood v. Allen*, 558 U.S. 290, 293 (2010)).

The Supreme Court has held that review "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen*, 131 S. Ct. at 1398. The

Court is limited to reviewing only the record that was before the state court when it rendered its order. *Id.*

<u>Standard for Ineffective Assistance of Counsel</u>

In *Strickland v. Washington*, the Supreme Court established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. 466 U.S. 668, 687-88 (1984). A petitioner must establish that counsel's performance was deficient and fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense. *Id.* This is a "doubly deferential" standard of review that gives both the state court and the petitioner's attorney the benefit of the doubt. *Burt*, 134 S. Ct. at 13 (citing *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011)).

The focus of inquiry under *Strickland*'s performance prong is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688-89. In reviewing counsel's performance, a court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The petitioner bears the heavy burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable[.]" *Jones v. Campbell*, 436 F.3d 1285, 1293 (11th Cir. 2006). A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," applying a "highly deferential" level of judicial scrutiny. *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690).

On the prejudice prong of the *Strickland* standard, Petitioner's burden to demonstrate prejudice is high. *Wellington v. Moore*, 314 F.3d 1256, 1260 (11th Cir. 2002).

Prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. That is, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

Even an unreasonable error by counsel does not necessitate the setting aside of a judgment if the error did not affect the judgment. *Id.* at 692. Strategic decisions rendered by counsel after a complete review of relevant laws and facts are "virtually unchallengeable." *Id.* at 690-91. Petitioner cannot meet his burden by showing that counsel could have chosen a different course. *White v. Singletary,* 972 F.2d 1218, 1220-21 (11th Cir.1992). Rather, Petitioner must show that counsel did not do what was constitutionally compelled to provide adequate counsel. *Accord Chandler v. United States,* 218 F.3d 1305, 1313 (11th Cir.2000) (*en banc*) (*quoting Burger v. Kemp,* 483 U.S. 776, 794, (1987)); *Hill v. Attorney Gen., Fla.*, No. 805-CV-911-T-30EAJ, 2008 WL 786652, at *3 (M.D. Fla. Mar. 20, 2008).

<u>Exhaustion and Procedural Default</u>

The AEDPA precludes federal courts, absent exceptional circumstances, from granting habeas relief unless a petitioner has exhausted all means of available relief under state law. Exhaustion of state remedies requires that the state prisoner "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights[.]" *Duncan v. Henry,* 513 U.S. 364, 365 (1995) (*citing Picard v. Connor*, 404 U.S. 270, 275-76 (1971)).

The petitioner must apprise the state court of the federal constitutional issue, not just the underlying facts of the claim or a similar state law claim. *Snowden v. Singletary*, 135 F.3d 732 (11th Cir. 1998). In addition, a federal habeas court is precluded from considering claims not exhausted but would clearly be barred if returned to state court. *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991) (if a petitioner has failed to exhaust state remedies and the state court to which the petitioner would be required to present his claims to meet the exhaustion requirement would now find the claims procedurally barred, there is a procedural default for federal habeas purposes regardless of the decision of the last state court to which the petitioner actually presented his claims). Finally, a federal court must dismiss those claims or portions of claims that have been denied on adequate and independent procedural grounds under state law. *Coleman*, 501 U.S. at 750. If a petitioner attempts to raise a claim in a manner not permitted by state procedural rules, he is barred from pursuing the same claim in federal court. *Alderman v. Zant*, 22 F.3d 1541, 1549 (11th Cir. 1994).

Procedural default will be excused only in two narrow circumstances. First, a petitioner may obtain federal review of a procedurally defaulted claim if he can show both "cause" for the default and actual "prejudice" resulting from the default. "To establish cause for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999) (internal quotation marks omitted). To establish prejudice, a petitioner must show there is at least a reasonable probability that the result of the proceeding would have been different. *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003).

The second exception, known as the fundamental miscarriage of justice, only occurs in an extraordinary case, where a "constitutional violation has probably resulted in the conviction of one who is actually innocent[.]" *Murray v. Carrier*, 477 U.S. 478, 479-80 (1986). Actual innocence means factual innocence, not legal insufficiency. *Bousley v. United States,* 523 U.S. 614, 623 (1998). To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). In addition, "[t]o be credible, a claim of actual innocence must be based on [new] reliable evidence not presented at trial." *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (quoting *Schlup*, 513 U.S. at 324.

## DISCUSSION

Cruz raises five issues in his Petition:

Ground One: The Trial Court denied Petitioner his Fifth, Sixth and Fourteenth Amendment United States Constitutional rights when it denied him the opportunity to present his chosen defense by excluding relevant motive evidence showing the alleged victim's motion to fabricate the alleged incident;

Ground Two: The Inconsistent verdict in the instant cause caused petitioner to be convicted of a crime which all essential elements of said crime were not proven beyond a reasonable doubt. This violated Petitioner's Fifth, Sixth and Fourteenth Amendment United States Constitutional rights;

Ground Three: Trial Counsel was ineffective for failing to request the Court to instruct the jury on the alibi defense. This violated Petitioner's Fifth, Sixth and Fourteenth Amendment United States Constitutional rights and denied him a fair trial;

Ground Four: Trial Counsel's performance fell below objective standards of reasonableness thereby violating Petitioner's Fifth, Sixth and Fourteenth Amendment United States Constitutional rights for failing to disclose all pertinent facts necessary for Petitioner to make and intelligent, informed decision to accept the State's plea offer or exercise his right to trial;

Ground Five: In the case at the bar the Trial Court denied Petitioner his Fifth, Sixth and Fourteenth Amendment United States Constitutional rights to a fair sentencing hearing when it considered unconstitutional and impermissible factors in determining the proper sentence to impose.

Respondent agrees that Grounds One, Two, Three, and Four are exhausted but argues that Ground Five is unexhausted.

### *GROUND ONE*

Cruz claims the Trial Court denied his due process right to present his chosen defense that the entire incident was fabricated by the alleged victim Rita Nunez. Cruz argues that Nunez fabricated the entire incident in retaliation for Cruz and Cardenas obtaining an injunction against Nunez husband Lazarro Corton. Respondent replies that the Trial Court did not abuse its discretion in excluding the injunction evidence and that Cruz has failed to show the exclusion had a substantial and injurious effect or influence in determining the jury's verdict.

Prior to Cruz's trial, the Prosecutor filed a motion in limine requesting that the trial court exclude any mention of an injunction obtained by Yanetsy Cordenas against Lazaro Corton. (Ex. 1 Supplement at R142). Cardenas, Corton, Nunez, and Cruz were at one time roommates. Cruz and his girlfriend Cardenas moved out of the residence because Corton had become infatuated with Cardenas and harassed her. After Cruz and Cardenas moved out of the residence, Corton allegedly kidnapped Cardenas. Cardenas obtained a domestic violence injunction against Corton. During the injunction hearing, Nunez threaten Cardenas saying, "I'm going to get even with you." (Vol. I, at 115).

After a hearing on the motion in limine, the Trial Court granted the motion and excluded the information regarding the injunction and threat made by Nunez. The Trial Court found that the danger of prejudice outweighed any probative value of the evidence.

Cruz appealed the decision to the Second District Court of Appeals, which affirmed *per curiam*.

"[T]he Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *Taylor v. Sec'y, Fla. Dep't of Corr.*, 760 F.3d 1284, 1294 (11th Cir. 2014) (*quoting Crane v. Kentucky,* 476 U.S. 683, 690, 106 S. Ct. 2142, 90 L.Ed.2d 636 (1986) (internal quotation marks omitted)). Federal courts will not generally review state trial courts' evidentiary determinations. *Hall v. Wainwright,* 733 F.2d 766, 770 (11th Cir.1984); *see Lisenba v. California,* 314 U.S. 219, 228 (1941) ("We do not sit to review state court action on questions of the propriety of the trial judge's action in the admission of evidence."). Indeed, in a habeas corpus action brought by a state prisoner, the [federal court's] authority is "severely restricted" in the review of state evidentiary rulings. *Shaw v. Boney,* 695 F.2d 528, 530 (11th Cir.1983) (per curiam); *see Estelle v. McGuire,* 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."). Habeas relief is warranted only when the error "so infused the trial with unfairness as to deny due process of law." *Lisenba,* 314 U.S. at 228; *see Estelle,* 502 U.S. at 75, (holding that habeas relief was not warranted because neither the introduction of the challenged evidence, nor the jury instruction on its use, "so infused the trial with unfairness as to deny due process of law"); *Bryson v. Alabama,* 634 F.2d 862, 864–65 (5th Cir. Unit B Jan.1981) ("A violation of state evidentiary rules will not in and of itself invoke Section 2254 habeas corpus relief. The violation must be of such a magnitude as to constitute a denial of 'fundamental fairness.'"); *cf. Chambers,* 410 U.S.

at 302, 93 S. Ct. 1038 (concluding that excluding "critical evidence" denied the defendant "a trial in accord with traditional and fundamental standards of due process"). *Taylor v. Sec'y, Fla. Dep't of Corr.*, 760 F.3d 1284, 1295 (11th Cir. 2014).

The Trial Court's exclusion of the injunction and the threat by Nunez did not deny Cruz fundamental fairness. The Trial Court found that any mention of the injunction or events that led to the injunction including Nunez threat to get even would be irrelevant and highly prejudicial because Corton was not a material witness, was not the victim in this case, nor was he present during the incident that led to this case. (Vol. I at 112-115). The Trial Court also found that Nunez's threat was made specifically to Cardenas and not Cruz. (Vol. I at 115). Cardenas, a co-defendant , pled and testified at Cruz's trial. (Vol. III at 441-504). The activity that led to the injunction being issued was not related to the criminal activity that led to Cruz's conviction.

Even if the injunction and Nunez's threat to Cardenas was relevant, the state court's evidentiary ruling did not fatally infect the trial as to justify habeas relief. To render a state-court proceeding fundamentally unfair, the excluded evidence must be "material in the sense of a crucial, critical, highly significant factor." *Taylor*, 760 F.3d at 1296 (*citing Boykins v. Wainwright,* 737 F.2d 1539, 1544 (11th Cir.1984)). Here the evidence was immaterial to acts involved in Cruz's trial. Thus, there was no error in excluding the injunction based upon Nunez's threat to Cardenas.

## GROUND TWO

Cruz argues that evidence was presented that he was armed with a firearm during the commission of the charged offenses. Cruz was charged with aggravated assault with a deadly weapon and armed burglary. The jury returned a guilty verdict on the charges

but found that Cruz was not armed with a firearm. Cruz claims the verdict was inconsistent with the evidence causing him to be convicted of a crime in which all essential elements were not proven beyond a reasonable doubt in violation of his Fifth, Sixth, and Fourteenth Amendments of the Constitution. Respondent argues the verdict was not inconsistent, and even if it was, the doctrine of lenity or jury pardon should apply.

After the verdict, Defense Counsel moved for arrest of judgment and judgment of acquittal and for a new trial based upon the jury's finding that Cruz used a firearm in the commission of the offenses charged in Counts I, II, and III. (Ex. 1 at 75). The Prosecutor charged Cruz with the use of a firearm in the information and the verdict form read: "[d]o you find the defendant actually possessed a firearm during the commission of the [crime] _____ yes _____ no." (Ex. 1 at 40-41). On Count I, the jury found Cruz guilty of aggravated assault with a deadly weapon but did not check yes or no regarding whether Cruz had a firearm. The jury found Cruz guilty of the lesser included crime of assault on Count II, rather than aggravated assault with a deadly weapon. (Ex. 1 at 40). And on Count III, the jury found Cruz guilty of burglary while armed, but specifically found that Cruz was not in possession of a firearm. (Ex. 1 at 41). A review of the trial testimony shows — and Respondent does not dispute — that Cruz possessed a firearm during the burglary and assault.

The Trial Court found:

> I think at most it's a - a jury mitigation for lack of a better word than anything else, and there's nothing else from the testimony it could have been other than a firearm, and it's obviously an attempt of the jury to reduce the penalty or mitigate.

(Ex. 1 at 82). The judge reiterated, prior to sentencing, that "I have no doubts that the issue previously addressed was a mitigation issue by the jurors, but what they don't have

an opportunity to see is the prior record." (Ex. 1 at 89). The Second District Court of Appeal affirmed *per curiam*.

Inconsistent verdicts are allowed because jury verdicts can result from lenity and therefore do not always speak to the guilt or innocence of the defendant. *United States v. Powell,* 469 U.S. 57, 68-69 (1984) (holding a jury may reach conflicting verdicts through "mistake, compromise, or lenity."). Inconsistent verdicts are not in and of themselves proof of a constitutional violation. *Id.* Merely because the verdict was inconsistent with the evidence presented at trial — Nunez testified that Cruz put a gun to her head when he entered her house (Vol. I at 135) — is insufficient to overturn Cruz's conviction. *United States v. Mitchell*, 146 F.3d 1338, 1344 (11th Cir. 1998) (noting that the Supreme Court has plainly determined that jury verdicts are "insulate[d] from review" on the ground that they are inconsistent).

Even if an error was committed by the inconsistent verdict, the error would have been harmless. Under the harmless error standard articulated in *Brecht v. Abrahamson,* habeas relief is granted only if the error "had a substantial and injurious effect or influence in determining the jury's verdict." 507 U.S. 619, 623 (1993) (*quoting Kotteakos v. United States,* 328 U.S. 750, 776, (1946)); *Romanes v. Sec'y, Dep't of Corr.*, 621 F. Supp. 2d 1249, 1258 (M.D. Fla. 2008). Even without the conviction for possessing a firearm, the evidence presented at trial showed that Cruz entered Nunez house shoved her against the wall, then forced her into the bed room, and threaten to kill her and her son if she did not hand over the papers. Cruz shows no error that would overturn or change the jury's verdict finding him guilty of aggravated assault, assault, or burglary with a deadly weapon. While there was evidence that Cruz was armed with a firearm during the commission of

the crimes, the jury found that no gun was used, and Cruz was found guilty of lesser included offenses. The jury's outcome benefits Cruz, so there was no substantial and injurious effect or influence on the jury's verdict by the finding that Cruz was not in possession of a firearm during the commission of the crime. Thus, Ground 2 fails to support a Constitutional violation.

*GROUND THREE*

Cruz argues Defense Counsel was ineffective for failing to request the Court to instruct the jury on his alibi defense. Cruz argues the error violated his Fifth, Sixth, and Fourteenth Amendment rights. Respondent counters the Post-Conviction Court correctly concluded that Cruz failed to establish the required prejudice prong of *Strickland.* Cruz's defense was not negated by the absence of the alibi instruction. Respondent continues there is no showing that the absence of the instruction deprived Cruz of a fair trial. Even if there was error, it was harmless.

Cruz raised this issue as Claim 1 in his first Rule 3.850 motion below. He also raised the absence of a jury instruction on alibi as a matter of fundamental error as Issue three in his direct appeal below. The Trial Court's decisions were affirmed *per curiam*.

The Post-Conviction Court summarily denied Claim 1 of his first 3.850 motion finding:

> 5. In Claim 1, Defendant assert[s] that trial counsel was ineffective for failing to request that the jury be instructed on an alibi defense. Defendant asserts that trial counsel should have requested an alibi defense instruction pursuant to Fla. Std. Jury Instr. 3.6(i). The record reflects that on direct appeal, Defendant argued that fundamental error occurred when the jury was not instructed on the alibi defense. A copy of Defendant's "Initial Brief of Appellant" is attached hereto. As previously noted, the Second District Court of Appeal affirmed Defendant's conviction and

sentence without opinion. *Cruz*, 11 So.3d 21 946. Because the appellate court found no fundamental error, Defendant fails to demonstrate that trial counsel's failure to request the jury be instructed on an alibi defense resulted in prejudice sufficient to undermine the outcome of the trial pursuant to *Strickland*. *Lowe v. State*, 2 So.3d 21,38 (Fla. 2008); *Chandler v. State*, 848 So.2d 1031, 1046 (Fla. 2003). Furthermore, the record reflects that witness testimony at the trial did not provide an alibi for Defendant.

6. At the trial, Rita Nunez, testified that her dog woke her up at approximately 1:00 a.m. at which time she was confronted by Defendant and co-defendant. (T.131-37, 151, 155, 171) At the trial, the defense presented testimony of Defendant's brother and co-defendant, but neither witness could provide Defendant with an alibi after 11:30 p.m. on the night of the criminal episode. (T. 399-506). Accordingly, Defendant cannot prove prejudice from the lack of an alibi defense instruction to the jury because the testimony given at trial did not support an alibi defense. Accordingly, Claim 1 is without merit.

(Ex. 13).

Under Florida law, an instruction on an alibi defense must be given if requested by counsel and there is evidence to support such an instruction. *Thomas v. Sec'y, Dep't of Corr.*, No. 2:14-CV-338-FTM-29CM, 2017 WL 1345577, at *10 (M.D. Fla. Apr. 12, 2017) (*citing Ford v. State*, 848 So. 2d 415, 416–17 (Fla. 4th DCA 2003)). Here, while the jury was not specifically instructed on the theory of alibi because counsel never requested a separate alibi instruction, the court's charge, stated the issues and law. Defense Counsel presented Cruz's alibi strategy. Two alibi witnesses testified that Cruz was in Homestead, Florida at approximately 11:30pm. on the night of the crime. In addition, Trial Counsel argued the alibi defense in her opening and closing arguments.

While Cruz avers Defense Counsel was deficient for not requesting an alibi jury instruction, he failed to show how the lack of an alibi instruction prejudiced him under *Strickland*. Defense Counsel presented two witnesses but neither witness established an

alibi for Cruz after 11:30pm. The crime occurred at approximately 1:00am. an hour and a half after Cruz's witnesses last saw him. No evidence was presented that provided Cruz with an alibi for his whereabouts at 1:00am. An alibi instruction would not have changed the outcome of the trial because the alibi testimony did not account for Cruz's whereabouts when the crime was committed.

The jury was properly and instructed about the presumption of innocence and the burden of proof in a criminal case. (Vol. III at 576–77). The jury was also instructed that they should find Petitioner not-guilty of the crime charged if the state had not proved the case beyond a reasonable doubt. (Vol. III at 577). The Court instructed the jury regarding the reliability of the evidence, weighing the evidence, and the credibility of witnesses. (Vol. III at 577-79). The Trial Court correctly instructed the jury it could believe or disbelieve all or any part of the evidence presented or the testimony of any witness. (Vol. III at 578-79). The jury was instructed that they must find Petitioner not-guilty if they did not believe the testimony of the state's witnesses or if they believed Petitioner's witnesses. It is generally presumed that jurors follow their instructions. *See Richardson v. Marsh*, 481 U.S. 200, 211 (1987).

Based on the instructions given to the jury and the trial transcript, it is clear the jury knew it should find Cruz not-guilty if there was any reasonable doubt he was present at Nunez's home during the crime. The jury knew that if it found Cruz's witnesses believable, it had to acquit Cruz of the charged offense. The jury rejected the defense presented and instead believed the testimony of the state witnesses. Cruz cannot demonstrate that failure to provide the alibi instruction resulted in the guilty verdict. He cannot demonstrate *Strickland* prejudice and so Ground III fails.

Cruz argues that Trial Counsel's performance fell below objective standards of reasonableness because she failed to disclose all pertinent facts necessary for him to make an intelligent, informed decision whether to accept the State's plea offer or exercise his right to trial. Cruz states the Prosecutor offered a plea deal that would have him serve only five years. Cruz says Defense Counsel told him he had a strong case and could win once the jury heard that he and Cardenas had an injunction filed against Nunez's husband and Nunez had threatened them just days before the incident. The jury would see the motive evidence that allowed Nunez to make up the allegations. Cruz believed the evidence was relevant, admissible, and would create reasonable doubt in the juror's minds. Cruz says if he had not been misadvised by Defense Counsel, he would have taken the plea deal and been released in five years rather than spend the rest of his life in prison.

Respondent responds that Cruz fails to demonstrate that the state court decisions were contrary to, or involved an unreasonable application of, clearly established Supreme Court law, or were based on an unreasonable determination of the facts considering the evidence presented in the state court proceeding.

Upon review the Post-Conviction Court held:

> 7. In Claim 1A, Defendant asserts that he rejected the State's plea offer due to trial counsel's mis-advice regarding the defense strategy at trial. Specifically, Defendant claims that [c]ounsel never advised the defendant that the testimony required to establish his defense might not be admitted, and defendant had no cause to consider the admissibility of his defense as he depended entirely on trial counsel for guidance in all legal matters … but defendant never was given any reason to believe this defense might not be allowed.

In his amended motion, Defendant claims that "had he known there was even a possibility his defense was inadmissible he would have concluded it would be in his best interest to accept the State's plea offer and in fact would have accepted the plea." [I]n order to be entitled to relief based on ineffective assistance of counsel for advising a defendant to reject a plea offer, the defendant must allege and prove that (1) counsel failed to convey a plea offer or misinformed the defendant concerning the possible sentence he faced, (2) the defendant would have accepted the plea but for the counsel's failure, and (3) acceptance of the plea would have resulted in a lesser sentence than was ultimately imposed. *Morgan v. State*, 991 So.2d 835, 839-40 (Fla. 2008) (citing Cottle v. State, 733 So.2d 963, 967 (Fla. 1999). It is apparent from Defendant's motion that trial counsel conveyed the plea offer to Defendant. Furthermore, Defendant does not assert or allege that he was misinformed by the possible sentence that he faced.

8. In reviewing claims of ineffective assistance of counsel, the Court must apply a strong presumption that counsel's conduct falls within the range of reasonable professional assistance and must avoid the distorting effects of hindsight. The standard is reasonable effective counsel, not perfect error-free counsel. Coleman v. State, 718 So.2d 827 (Fla. 4th DCA 1998), Schofield v. State, 681 So.2d 736 (Fla. 2d DCA 1996). By Defendant's own admission in his motion, he relied upon trial counsel's defense strategy to proceed to trial. Even though, in hindsight, Defendant's counsel may have approached the case differently or may have recommended that Defendant proceed to trial with a different defense strategy, that does not necessarily or automatically lead to a conclusion that defense counsel was deficient or that the outcome of the case would have had any reasonable likelihood of being different. *Stano v. State*, 520 So.2d 278, 281 n.5 (Fla. 1988). In general, "[a]bsent extraordinary circumstances, strategic or tactical decisions by trial counsel are not grounds for ineffective assistance of counsel claims." *Kenon v. State*, 855 So.2d 654 (Fla. 1st DCA 2003). Accordingly, Claim 1A is without merit.

(Ex 13, Order Denying Rule 3.850 Motion at 3-4).

The test for ineffective assistance of counsel in the Eleventh Circuit, is not based upon what the best lawyers would have done. *White v. Singletary,* 972 F.2d 1218, 1220–1221 (11th Cir.1992). Nor is the test even what most good lawyers would have done. *Id.*

The question is whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted. *Id.* Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. *Id.* *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. *Id.* Courts are not interested in grading lawyers' performances; they are interested in whether the adversarial process worked adequately. *Id.* This Court must indulge the strong presumption that Defense Counsel's performance was reasonable and that she made all significant decisions in the exercise of reasonable professional judgment." *See Chandler v. United States,* 218 F.3d 1305, 1314 (11th Cir.2000) (en banc) *cert. denied,* 531 U.S. 1204 (2001) (internal marks omitted).

Cruz admits that Defense Counsel discussed the plea deal with him and recommended that he reject the deal and go to trial because he had a strong case. Defense Counsel believed Cruz's case was strong due to Nunez's threat to get even and the injunction against her husband was issued only a few weeks prior to the incident. Cruz accepted Defense Counsel's strategy and went to trial.

While Cruz states he was not provided information by Defense Counsel that would have caused him to accept the plea deal rather than go to trial, the plea deal was discussed with Cruz openly in Court and on the record at the outset of trial. (Ex. 13, Amended Motion for Rule 3.850 at 3). The Prosecutor stated that she had offered a plea of below ten years. (Ex. 13, Amended Motion for Rule 3.850 at 3). When Cruz rejected that offer, the Prosecutor offered him a deal of five years. (Ex. 13, Amended Motion for Rule 3.850 at 3). The Prosecutor explained to Cruz that if he was convicted the minimum

scoresheet would be 134.5 months incarceration. (Ex. 13, Amended Motion for Rule 3.850 at 3). Cruz was fully informed that his sentence would be greatly increased if he lost at trial. Cruz chose to proceed to trial.

Before the trial started, the Prosecutor made a motion in limine that Nunez's threat to get even and the facts surrounding the injunction should be excluded from evidence. The Prosecutor's motion in limine was granted. Cruz's defense was heavily based upon the evidence precluded by the motion in limine and he lost. Defense Counsel's tactical decision and strategy failed, but the strategy was not unreasonable given the facts. Cruz knew the consequences of going to trial and losing and yet went to trial. Thus, Cruz failed to show there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Ground Four fails.

## *GROUND FIVE*

Cruz claims that the Sentencing Court based his sentence on unconstitutional and impermissible factors denying him a fair and impartial sentencing hearing. Cruz initially filed this claim as a motion to correct an illegal sentence under Fla. R. Crim P. 3.808(a) arguing that the Sentencing Court's comment he showed no remorse for the crimes he committed made the sentence illegal. The Post-Conviction Court found that the motion was not cognizable as a Rule 3.800(a) motion and denied Cruz relief. Cruz then filed the second motion under Fla. R. Crim. P. 3.850 alleging Appellate Counsel was ineffective for not objecting to the unconstitutional factors being used at sentencing. The Rule 3.850 motion was denied as successive and untimely.

Respondent argues that Ground Five is procedurally unexhausted because neither claim was presented to the State Court in a procedurally correct manner. Therefore,

Ground Five should be denied under the procedural default doctrine. In his Reply Brief, Cruz agrees that the claims in Ground Five were not presented to the State Court in a procedurally correct manner and are procedurally barred. However, Cruz argues that the procedural bar should not be imposed because he meets the exceptions to the procedural bar and his failure to file is not procedurally barred under *Martinez v. Ryan*, 132 S. C.t 1309, 1318-20 (2012).

### *Reply Brief*

The Court notes that Cruz raised his cause and prejudice argument and his *Martinez* argument for the first time in his reply brief. Cruz is barred from raising new claims in a reply brief. *See Garcia v. Sec'y, Dep't of Corr.*, No. 8:10-CV-2116-T-27MAP, 2013 WL 3776674, at *5 (M.D. Fla. July 17, 2013). This Court is mindful of its responsibility to address and resolve all claims raised in a petition. *Clisby v. Jones,* 960 F.2d 925, 936 (11th Cir.1992) (instructing "the district courts to resolve all claims for relief raised *in a petition* for writ of habeas corpus pursuant to 28 U.S.C. § 2254.") (emphasis added). However, the Eleventh Circuit Court of Appeals has held that arguments raised for the first time in a reply brief are not properly before a reviewing court. *Herring v. Secretary, Dept. of Corrections,* 397 F.3d 1338 (11th Cir.2005); *United States v. Coy,* 19 F.3d 629, 632 n. 7 (11th Cir.1994) (citation omitted); *see also United States v. Whitesell,* 314 F.3d 1251, 1256 (11th Cir.2002) (Court need not address issue raised for first time in reply brief), *cert. denied,* 539 U.S. 951 (2003); *United States v. Dicter,* 198 F.3d 1284, 1289 (11th Cir.1999) (issue raised for first time in reply brief waived); *United States v. Martinez,* 83 F.3d 371, 377 n. 6 (11th Cir.1996) (declining to consider arguments raised for the first time in a reply brief); *See also Rules Governing Habeas Corpus Cases Under*

*Section 2254*, Rule 2(c) (2008) ("The petition must ... specify all the grounds for relief available to the petitioner[.]") (emphasis added).  Even if the Court considered his reply brief arguments, Cruz's claims still fail.

### *Actual Cause and Prejudice*

A claim barred by a procedural default in state court remains barred in federal court, absent a demonstration of "actual cause and prejudice" or "manifest injustice." *Murray v. Carrier,* 477 U.S. 478, 492 (1986); *Engle v. Isacc,* 456 U.S. 107 129 (1981). Cruz argues he satisfies the cause and prejudice test because his Appellate Counsel was ineffective because he did not raise whether the Sentencing Court considered improper factors in sentencing on direct appeal.  Cruz says Appellate Counsel's failure constitutes cause and the error resulted in prejudice.  "Under the cause and prejudice exception, a [] movant can avoid application of the procedural default bar by showing cause for not raising the claim of error on direct appeal and actual prejudice from the alleged error." *Geter v. United States,* 534 F. App'x 831, 835–36 (11th Cir. 2013) (quoting *McKay v. United States,* 657 F.3d 1190, 1196 (11th Cir. 2011) (internal quotation marks and alterations omitted).  To demonstrate cause, a movant "must show that some objective factor external to the defense prevented [the movant] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [the movant's] own conduct." *Lynn v. United States,* 365 F.3d 1225, 1235 (11th Cir.2004).

Although ineffective assistance of appellate counsel can operate to provide cause for the procedural default of a claim of trial court error, the underlying ineffective assistance of appellate counsel claim must also be exhausted.  *Edwards v. Carpenter,* 529 U.S. 446, 446–47 (2000) (concluding that a federal habeas court is barred from

considering a procedurally defaulted ineffective assistance of counsel claim as cause for procedural default of another claim); *Hill v. Jones*, 81 F.3d 1015, 1029–31 (11th Cir. 1996) (noting that the Supreme Court's jurisprudence on procedural default dictate that procedurally defaulted claims of ineffective assistance cannot serve as cause to excuse a default of a second claim).

Cruz did not bring the ineffective assistance of appellate counsel claim in the State Court. The ineffective assistance of appellate counsel claim is unexhausted. The ineffective assistance of appellate counsel claim, does not satisfy the cause and prejudice, or fundamental miscarriage of justice exception to overcome the procedural default. Cruz's claim for the cause and prejudice exception to the procedural bar is itself procedurally barred and may not be used to establish the exception. *Edwards,* 529 U.S. at 446–47.

## *Martinex v. Ryan*

Cruz also states he filed no ineffective assistance of appellate counsel claim in his first Rule 3.850 claim because he did not have appointed counsel to aid him in his motion. Cruz argues under *Martinez v. Ryan*, 132 S. C.t 1309, 1318-20 (2012), his failure to file is therefore not procedurally barred. Cruz says he tried to file ineffective assistance of appellate counsel in his second Rule 3.850, motion but the motion was dismissed as successive and untimely. Cruz lays the blame on the lack of counsel to aid him. Although Cruz raises *Martinez* to excuse his failure to raise his ineffective assistance of appellate counsel claim, the United States Supreme Court has recently held that *Martinez* applies exclusively to ineffective assistance of trial counsel claims. *Davila v. Davis*, 137 S. Ct.

2058 (2017). Since Cruz is bringing an ineffective appellate counsel claim, his *Martinez* argument fails.

Cruz is procedurally barred because he filed a second successive and untimely Rule 3.850 motion which was denied as procedurally improper. While the matter should have been raised on direct appeal, Cruz also failed to raise it in his first *pro se* Rule 3.850 motion. Cruz shows neither cause and prejudice — failing to timely file his Rule 3.850 motion was his own fault — nor did he show a fundamental miscarriage of justice because he cannot show actual innocence of the crime of conviction as required by *Smith v. Murray,* 477 U.S. 527, 537 (1986). Cruz's claim for relief in Ground Five is procedurally barred from review on the merits.

## CERTIFICATE OF APPEALABILITY

Cruz is not entitled to a certificate of appealability. A prisoner seeking to appeal a district court's final order denying his petition for writ of habeas corpus has no absolute entitlement to appeal but must obtain a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1); *Harbison v. Bell*, 556 U.S. 180, 184 (2009). "A [COA] may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) or, that "the issues presented were adequate to deserve encouragement to proceed further", *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003)(citations omitted). Petitioner has not made the requisite showing.

Accordingly, it is now

**ORDERED:**

Petitioner Jose Cruz's Petition for Writ of Habeas Corpus (Doc. 1) is **DENIED**.

The Clerk of Court is directed to enter judgment terminate all pending motions, and close the file.

**DONE** and **ORDERED** in Fort Myers, Florida this 7th day of March 2019.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:
All Parties of Record
SA: FTMP-2